### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| Michelin North America, Inc., | Civil Action No. 6:17-cv-01599-HMH |
| Plaintiffs, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT** |
| v. | |
| Federal Insurance Company, | |
| Defendant. | |

Plaintiff Michelin North America, Inc. **("Michelin")** is submitting this Memorandum in Opposition to Defendant Federal Insurance Company's ("Federal") Motion to Dismiss Michelin's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support of Michelin's Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) and Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### INTRODUCTION

Federal has breached the Pension and Welfare Fund Fiduciary Dishonesty Policy it issued to Michelin (the "Federal-Michelin Policy") by failing to pay the full policy limits of $5,000,000 owed to Michelin as a result of fiduciaries of the Michelin Retirement Plan (the "Plan") stealing over $8,000,000 in employee retirement funds. Michelin procured the Federal-Michelin Policy to protect its employee retirement funds from precisely this risk, in accordance with ERISA's bonding requirement, *see* 29 U.S.C.A. § 1112(a). As revealed from its Memorandum in Support of Motion to Dismiss, Federal does not dispute that:

- the Plan suffered a loss in excess of the policy limits of $5,000,000;

- such loss falls within the scope of the Federal-Michelin Policy's insuring clause;

- such loss occurred during the time period the Federal-Michelin Policy and its coverage was in effect;

- the Plan was an insured under the Federal-Michelin Policy;

- Michelin is the Principal Insured under the Policy with standing to bring this action on behalf of the Plan.

Nevertheless, Federal has searched for any reasons to avoid and delay payment in full. Federal refused to pay any portion of the claim until over a year after Michelin first notified Federal of the claim in early 2016.  In April 2017, Federal agreed to pay $2,540,042 of the $5,000,000 it owes.  Federal's refusal to pay the full $5,000,000 is based solely on an "Other Insurance" provision contained in the Federal-Michelin Policy.

Apparently recognizing that the truth defeats its argument, Federal's Memorandum deceptively attempts to mislead the Court into believing that Michelin procured two policies- the "Fiduciary Dishonesty Policy" and the "Corporate Policy"- and that Michelin is just picking on Federal.  The reality is that the only policy procured by Michelin is the Federal-Michelin Policy (which Federal calls the "Fiduciary Dishonesty Policy" in its Memorandum).  The so-called "Corporate Policy" was procured by Compagnie Generale Des Etablissements Michelin ("CGEM") from AIG Europe, Ltd (hereinafter the "AIG-CGEM Policy").  CGEM is a French entity that while related to Michelin, *is a separate and distinct entity from Michelin*.  CGEM is the policyholder and the insured under the policy.  The AIG-CGEM Policy is governed by French law and requires all disputes to be resolved in France.  It is not an ERISA bond.  As discussed below, it fails numerous statutory requirements regarding ERISA bonds.  The only mention of CGEM in Federal's Memorandum is first in a footnote and, then, as an insured under the so-called "Corporate Policy."  While Federal accuses Michelin of "glossing over" the AIG-CGEM Policy (ECF No. 13-1 p. 7), Federal *ignores* the fact that CGEM and Michelin are separate and distinct entities, that CGEM (not Michelin) procured the AIG-CGEM Policy and is

the only policyholder under the policy, and that, unlike the Federal-Michelin Policy, the AIG-CGEM Policy is not an ERISA bond.  These omissions reveal the significance of these facts. Federal's argument is nothing more than another tactic designed to further delay Federal's obligation to pay full benefits.

The material facts are not in dispute and the only issue is a legal issue that the Court should resolve at this stage in favor of Michelin.[1]  "Questions of contractual interpretation are generally resolved as a matter of law."  *Contravest Inc. v. Mt. Hawley Ins. Co.*, No. 9:15–cv–00304–DCN, 2017 WL 1190880, at *8 (D.S.C. March 31, 2017) (citing *Thalia S. ex rel. Gromacki v. Progressive Select Ins. Co.*, 401 S.C. 395, 399, 736 S.E.2d 863, 865 (Ct. App. 2012)).  Moreover, even to the extent there is an ambiguity in the Federal-Michelin Policy, "South Carolina law requires the court to construe the ambiguity in favor of the insured."  *Id.* (quoting *Canopius US Ins., Inc. v. Middleton*, 202 F. Supp. 3d 540, 543 (D.S.C. 2016)).

Because the only issue is a legal issue, Michelin is requesting that the Court find that Federal must pay the remaining $2,459,958 that is owed under the Federal-Michelin Policy, and enter judgment in favor of Michelin against Federal in the amount of $2,459,958.

## PERTINENT FACTUAL BACKGROUND

Michelin is incorporated in New York and has a principal place of business in South Carolina.  (Complaint ¶1)  Michelin established and maintains the Michelin Retirement Plan ("the Plan"), which contains retirement funds for its employees and is governed by ERISA.  (*Id.* ¶5).  To protect those retirements funds, and in accordance with the ERISA bonding requirement, Michelin procured the Federal-Michelin Policy from Federal.  (*Id.* ¶7).  The Insuring clause contained in the Federal-Michelin Policy provides:

---

[1] Federal appears to agree that the only issue in this dispute is a legal issue.  *See* Federal's Memo. Supp. Mot. Dismiss at p. 3 (ECF no. 13-1).

> [Federal] agrees to pay and make good to the Insured all such losses as any such Insured may during the policy period sustain or discover it has sustained of money, securities and other property though any fraudulent or dishonest act or acts (including larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication) committed by any Employee or Employees, acting alone or in collusion with others.
>
> "Employee" or "Employees" means, respectively, any one or more of the natural persons while in the service of any Employee Benefit Plan (included as an Insured herein) as fiduciary, trustee, administrator, officer or employee and any other natural person who handles ERISA plan assets, who is required to be bonded by Title 1 of the Employee Retirement Income Security Act of 1974 and the Pension Protection Act of 2006 and also includes any ex-Employee during a period not exceeding thirty (30) days following the termination of such service.

(*Id.* ¶11; Federal-Michelin Policy p. 2 of 5, ECF No. 1-1 p. 6 of 29).

The Federal-Michelin Policy has a limit of $5,000,000 and has been in effect since at least April 1, 2013. (Complaint ¶9). The Plan is and has been an "Insured," and Michelin is the Principal Insured, which means that only Michelin has "the right to make, adjust, receive and enforce payment of any and all claims hereunder and shall be deemed to be the sole agent of all Plans for such purposes." (*Id.* ¶¶8, 10).

In approximately January 2016, Michelin learned that fiduciaries of the Plan stole retirement funds of the Plan in excess of $8,000,000. (*Id.* ¶12). The fiduciaries who engaged in these fraudulent and dishonest acts were "Employees" under the Policy. (*Id.*).

Shortly after discovering the fraudulent scheme, Michelin notified Federal and made a claim on the Federal-Michelin Policy. (*Id.* ¶14). Federal refused to pay anything for over a year despite there being no valid reason to deny coverage. (*Id.* ¶15). After more than a year of demands and correspondence, Federal wrote MNAI a letter dated March 31, 2017 wherein it conceded that 1) the Plan is an Insured, 2) the Plan suffered the claimed loss, 3) certain

4

individuals who qualify as "Employees" under the Policy acted dishonestly within the meaning

of the Insuring clause of the Policy.  (*Id.* ¶16).  Nevertheless, Federal continued to refuse to

cover the loss, purportedly based on the "Other Insurance" clause (hereafter the "Other Insurance

Clause") in the Federal-Michelin Policy, which provides that:

> [i]f the Insured, or any other party at interest in any loss, has any
> other bond indemnity or insurance which in the absence of this
> policy would cover such loss in whole or in part, then this policy
> shall be null and void, and shall not cover, to the extent of the
> amount of such other bond, indemnity or insurance, but shall attach
> to and cover, subject to its conditions and limitations, only the
> amount of such loss in excess of the amount of such other bond,
> indemnity or insurance.

(*Id.*; Federal-Michelin Policy p. 4 of 5, ECF No. 1-1 p. 8 of 29).

In the March 31, 2017 letter, Federal asserted that the AIG-CGEM Policy provided

primary coverage and the Federal-Michelin Policy was excess.  (Complaint ¶17; 3/31/17 Letter,

ECF No. 1-2).  By letter dated April 12, 2017, Federal informed Michelin that it was agreeing to

pay $2,540,042 to the Plan, but refused to pay the remaining portion of the $5,000,000 of

coverage.  (Complaint ¶18; 4/12/17 Letter, ECF No. 1-3).  As the alleged basis for denying full

coverage, Federal claimed that the loss must be allocated on a pro-rata basis between the

Federal-Michelin Policy and the AIG-CGEM Policy.  (Complaint ¶18; 4/12/17 Letter).

Despite Michelin's repeated demands, Federal has continued to maintain this position,

thereby necessitating the filing of this action.  Federal's Motion to Dismiss is based on this same

position.  Federal attached the AIG-CGEM Policy to its Motion to Dismiss (ECF 13-2).  The

AIG-CGEM Policy was procured by CGEM.  CGEM is a French entity that is a grandparent

company to Michelin and is separate and distinct from Michelin.  CGEM is the only policyholder

and the only insured on the AIG-CGEM Policy.  The term "**Policyholder**" is defined as the

"legal entity designated in Article 1 of the Declarations."  (ECF No. 13-2 p. 44).  Article 1 of the

5

Declarations lists CGEM.  (*Id.* p. 39).  The AIG-CGEM Policy defines "**Insured**" as "[t]he **policyholder**, for losses suffered by it or its **subsidiaries** and resulting from an **offense** covered by this contract."  (ECF No. 13-2 p. 41).  Accordingly, while the policy purports to cover certain losses suffered by CGEM and its subsidiaries, CGEM is still the only Policyholder.  Moreover, the AIG-CGEM Policy is governed by French law and requires that all disputes be brought in France.  (*Id.* p. 51).

The AIG-CGEM Policy includes a "Passport Program" that specifically contemplates the existence of local policies outside the European Union, and refers to the AIG-CGEM Policy as the "master contract." (ECF No. 13-2 p. 56).  This reveals that the AIG-CGEM Policy is a "Difference in Conditions" policy, which means it is designed to fill the gaps between the coverage provided by a multinational organization's master insurance policies and coverage provided by policies purchased locally in accordance with each country's insurance requirements so that the organization has uniformity of coverage regardless of location.  *See* Glossary of Insurance & Risk Management Terms, IRMI Online, https://www.irmi.com. The AIG-CGEM Policy provides that where there is a local policy not reinsured by the AIG-CGEM Policy, the coverage applies on a Difference in Conditions and Difference in Limits basis.  (*Id.* p. 57).  The Difference in Conditions means that coverage applies as of the first euro, subject to the deductibles, when the coverage is more extensive than the coverage granted by the local policy and if the local policy does not offer *any* coverage covered by the AIG-CGEM Policy.[2]  (*Id.* p. 59).  The coverage provided in the AIG-CGEM Policy is reduced by any payment made by any AIG affiliate under the master policy or any of the various local policies.  (*Id.* pp. 46, 59).

---

[2] CHUBB, which owns Federal, has a similar difference in conditions program and, like the one here, the CHUBB master policy is excess over a local policy outside of CHUBB's network.  *See* http://www.chubb.com/businesses/cci/chubb18131.pdf.

Federal's Memorandum in Support of the Motion to Dismiss, like its March 31, 2017 letter, reveal that the material facts are not in dispute, and the only issue is whether the AIG-CGEM Policy relieves Federal of its obligation to pay the full policy limits to Michelin, its insured.  As discussed in detail below, the AIG-CGEM Policy does not relieve Federal of its obligation to pay the full policy limits to Michelin.

## LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6) Standard.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) must be read in conjunction with Rule 8(a).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Parker v. Wendy's Int'l, Inc.*, 41 F. Supp. 3d 487, 490 (4th Cir. 2014). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The pleading standard does not require "detailed factual allegations," though it does require the plaintiff to allege grounds for entitlement to relief, including that "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  *Atkinson v. Prestage*, No. 3:15-cv-2950-TLW, 2016 U.S. Dist. LEXIS 173797, at *2, 2016 WL7131918, at *1 (D. S.C. Aug. 16, 2016) (citations omitted).

**B.**     **Federal Rule of Civil Procedure 12(c) Standard.**

After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c); *S&S Const., Inc. v. Reliance Ins. Co.*, 42 F. Supp. 2d 622, 626 (D.S.C. 1998). Such a motion should be granted "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Colin v. Marconi Commerce Sys. Emps.' Ret. Plan*, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004) (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)); *see also S&S Const.*, 42 F. Supp. 2d at 626 (stating that a motion for judgment on the pleadings "should be granted when accepting the facts as pleaded in the Complaint, the case can be decided as a matter of law.") (citing *Tollison v. B & J Machinery Co., Inc.*, 812 F. Supp. 618, 619 (D.S.C. 1993)).

Issues of insurance coverage are appropriate for the court to consider on a motion for judgment on the pleadings.  *See Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998) (affirming grant of judgment on the pleadings to plaintiff in declaratory judgment action regarding insurance coverage).  This is particularly true here because, as set forth above, the material facts are not in dispute and this case presents a legal issue that the Court should resolve at this stage in favor of Michelin.  *See Contravest Inc.*, 2017 WL 1190880, at *8 (citing *Thalia S. ex rel. Gromacki*, 401 S.C. at 399, 736 S.E.2d at 865; *Canopius US Ins., Inc.* 202 F. Supp. 3d at 543).

**C.**     **Summary Judgment Standard.**

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*,

242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. Issues of insurance coverage are appropriate matters for summary judgment *Ward v. Dixie Nat'l Life Ins.*, 257 Fed. Appx. 620 (4th Cir. Nov. 29, 2007) (vacating a grant of summary judgment to the insurer and remanding with instructions that the district court grant summary judgment for the insured because the meaning of "actual charges" in insurance policy was patently ambiguous and must be construed in favor of the insured).

## ARGUMENT

### A.     The Federal-Michelin Policy Provides Full Coverage Because It Is Mandated By ERISA.

Under ERISA, 29 U.S.C.A. § 1112(a), "[e]very fiduciary of an employee benefit plan and every person who handles funds or other property of such a plan (hereafter in this section referred to as "plan official") shall be bonded as provided in this section." It must "provide protection to the plan against loss by reason of acts of fraud or dishonesty," 29 U.S.C.A §1112(a)(3), and "must provide recovery for loss occasioned by such acts even though no personal gain accrues to the person committing the act and the act is not subject to punishment as a crime or misdemeanor . . . " 29 C.F.R. §2580.412-9. An ERISA bond "covers" those fiduciaries and applies to "natural persons." *See, e.g.,* 29 C.F.R. §§ 2580.412-3, 2580.412-12. The statute requires that each natural person who handles plan funds must be bonded in an amount of *at least* 10% of the funds handled or $500,000, whichever is less. *See* 29 C.F.R. §§ 2580.412-11, 2580.412.12. The bond must "insure from the first dollar of loss up to the requisite bond amount and not to permit the use of deductible or similar features whereby a portion of the risk within such requisite bond amount is assumed by the insured." 29 C.F.R. § 2580.412-11.

The Federal-Michelin Policy was procured in accordance with these ERISA bonding requirements, and it is clear that the parties intended that the policy comply with ERISA. *See* Complaint ¶6; ECF No. 1-1 at pp. 6, 7. It is the only policy that satisfies the bonding requirements. The AIG-CGEM Policy does not satisfy them. First, the AIG Europe is not an approved surety to issue an ERISA bond.[3] Second, the AIG-CGEM Policy has a 500,000 euro deductible, which is prohibited. 29 C.F.R. § 2580.412-11. Third, the AIG-CGEM Policy covers only fraud and theft that is "committed with the intention of deriving a profit or of harming the **insured** or one of its **subsidiaries**," and such limitation is prohibited under ERISA. *See* 29 C.F.R. §2580.412-9. Fourth, the policy limits of the AIG-CGEM Policy are reduced and exhausted as claims are made, which is in violation of the ERISA bonding requirements. *See* ECF No. 13-2 p. 46; 29 C.F.R. § 2580.412-16.

The Other Insurance Clause in the Federal-Michelin Policy is void because it limits the coverage that is mandated by ERISA, much like the policy at issue in *Vernon v. Harleysville Mutual Casualty Co.*, 244 S.C. 152, 135 S.E.2d 841 (1964). In *Vernon*, a prospective customer of a car dealer collided with an uninsured driver while test driving the dealer's vehicle. *Id.* at 153, 135 S.E.2d at 842. The uninsured driver was at fault. *Id.* The dealer had a policy from Harleysville Mutual Casualty Company whereby Harleysville agreed to pay, in accordance with a statute in effect at the time requiring such coverage up to $5,000, all sums that the dealer was

---

[3] Every ERISA bond "shall have as surety thereon a corporate surety company which is an acceptable surety on Federal bonds under authority granted by the Secretary of the Treasury pursuant to sections 9304–9308 of title 31." 29 U.S.C.A. § 1112(a) "[I]n order for a surety company to be eligible for such grant of authority, it must be incorporated under the laws of the United States or of any State and the Secretary of the Treasury shall be satisfied of certain facts relating to its authority and capitalization." 29 C.F.R. § 2580.412-21. A list of such companies is published in the Federal Register. *Id.* AIG Europe is not incorporated in the United States or any state, and is not on the list. *See* Dep't of the Treasury's Listing of Approved Sureties, Department Circular 570.

entitled to recover as damages from an uninsured driver due to damage to the insured's vehicle. *Id.* at 154, 135 S.E.2d at 842.  The Harleysville policy also included an "other insurance" provision which provided: "[w]ith respect to property damage, the insurance afforded under this endorsement shall be excess insurance over any other valid and collectible insurance against such property damage." *Id.*

The prospective customer had a policy with American Security Insurance Company whereby American agreed "[t]o pay for loss caused by collision to the owned automobile or to a non-owned automobile." *Id.* at 154, 135 S.E.2d at 843.  The American policy had an other insurance clause providing that "as to a non-owned automobile the coverage provided by said policy 'shall be excess insurance over any other valid and collectible insurance.'"  *Id.* Accordingly, there were competing excess other insurance clauses.

The dealer obtained a judgment for property damage against the uninsured driver and brought a declaratory judgment action against Harleysville and American to determine coverage. The trial court held that American had primary coverage and Harleysville had excess.  *See id.* at 156, 135 S.E.2d at 843.  The South Carolina Supreme Court reversed and held that Harleysville had the coverage.  It explained that the "policy issued to [dealer] by Harleysville included an uninsured motorist endorsement as was mandatorily required by the Uninsured Motorist Act" and "[t]o permit Harleysville, under the uninsured motorist endorsement, to exclude coverage where there is 'other insurance' would be a limitation upon the statutory coverage required by Section 46-750.14 of the Code."  *Id.* at 157, 135 S.E.2d at 843-44.  It did not matter that American would have covered the loss.  What mattered was that the coverage under the Harleysville policy was statutorily required.

Similarly, here, Federal-Michelin Policy is mandated by statute. The Federal-Michelin Policy meets the statutory requirements, while the AIG-CGEM Policy does not. To allow Federal to exclude coverage where there is other insurance would be a limitation upon the statutory coverage required by ERISA.[4] The fact that ERISA does not require the bond to be over $500,000 is immaterial. Indeed, the Federal-Michelin Policy does not limit the Other Insurance Clause to coverage in excess of $500,000. Further, the Other Insurance Clause purports to be null and void where another policy "would cover such loss in whole or in part." If the Federal-Michelin Policy is null and void, then there would be no valid ERISA bond because the AIG-CGEM Policy does not meet the ERISA bond requirements. The Other Insurance Clause must be primary, and any other interpretation violates public policy and the express statutory requirements of ERISA.

The *Vernon* Court looked to the purpose of the Uninsured Motorist Act in protecting innocent victims from financially irresponsible motorists. *See id.* at 156, 135 S.E.2d at 843. This is consistent with the rule that "[w]hen a bond is given in compliance with the provisions of a statute, the court will hold liberally the wording and terms of the bond to carry out the statutory purpose." *See, e.g.*, *Watson v. Harmon*, 280 S.C. 214, 218, 312 S.E.2d 8, 10 (Ct. App. 1984) (quoting *Pickens Cty. v. Love*, 171 S.C. 235, 171 S.E. 799, 804 (1933)); *see also S.C. Pub. Serv. Comm'n v. Colonial Const. Co.*, 274 S.C. 581, 585, 266 S.E.2d 76, 78 (1980) (the terms of a

---

[4] *See also Lucas v. Garrett*, 209 S.C. 521, 526, 41 S.E.2d 212, 214 (1947) (holding that a carrier's insurance policy, which was "required by statute for the protection of the shipper or the owner of the cargo," provided coverage without any contribution from the insurer of the owner of the damaged goods despite "other insurance" clause); *American Alliance Ins. Co. v. Brady Transfer & S. Co.*, 101 F.2d 144, 147 (8th Cir. 1939) (resolving an ambiguous "other insurance" clause in favor of the insured and finding "[t]he attempt by construction to limit the liability of the insurer on a policy of this character would violate the provisions of the Iowa statute pertaining to the carrying of insurance by motor vehicle carriers, as construed by the Supreme Court of that state").

bond required by statute "must be construed in light of and consistent with the purpose of its authorizing statute").

The purpose of ERISA is to "protect ... the interests of participants in employee benefit plans and their beneficiaries . . ." *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996). Similarly, the purpose of ERISA's bonding requirement is the protection of retirement funds, such as the Plan. *See, e.g., Musso v. Baker*, 834 F.2d 78, 80 (3d Cir. 1987); *see also* Dep't of Labor Field Assistance Bulletin No. 2008-04, "Guidance Regarding ERISA Fidelity Bonding Requirements" (Nov. 25, 2008), available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2008-04.

The Federal-Michelin Policy must be construed to carry out theses purposes of protecting the participants and beneficiaries of employee benefit plans by construing the Other Insurance Clause to provide full coverage of $5,000,000. In *Watson v. Harmon*, *supra*, the South Carolina Court of Appeals held that a homeowner could maintain an action on a bond submitted by a licensed home builder in accordance with a statutory requirement even though there was provision allowing in the statute or bond allowing such an action, because a purpose of the statute and regulations regarding licensing of residential home builders is to protect the public from financially irresponsible home builders. *Watson*, 280 S.C. at 218, 312 S.E.2d at 10.

Similarly, in *Hutto v. American Fire and Casualty Ins. Co.*, 215 S.C. 90, 54 S.E.2d 523 (1949), a city ordinance required taxicab operators to file a copy of an indemnity bond or liability insurance policy with the city, and the taxi operator filed a policy from American Fire and Casualty Insurance. The ordinance required that the policy could not be canceled until five days after written notice to the city clerk. *Id.* at 94, 54 S.E.2d at 525. After the American policy expired, the operator obtained a policy from Keystone and listed the Keystone policy in a letter

to the city and on its annual city license application, but did not otherwise give the city notice of cancellation. *Id.* at 95, 54 S.E.2d at 526. A year after the American policy expired, an accident occurred involving a taxicab that was not listed as a covered vehicle on the American policy. *See id.* Keystone went bankrupt after the accident but before the lawsuit. *Id.* at 97, 54 S.E.2d at 527.

The *Hutto* Court held that the American policy had not been cancelled and that the American policy covered the taxicab involved in the accident. The Court looked to "the purpose of the ordinance and the character of coverage involved" and determined that "[t]he manifest purpose of this ordinance [was] the protection of passengers and members of the public who may be injured or their property damaged through the negligent operation of taxicabs by financially irresponsible owners." *Id.* at 97-98, 54 S.E.2d at 527. The *Hutto* Court rejected American's contention that its policy, even if in force, did not cover the vehicle involved in the accident, because American's contention "does not take into account the character of insurance here involved" and the ordinance's purpose of protecting passengers. *Id.* at 101, 54 S.E.2d at 528.

Here, the purpose of ERISA and the ERISA bonding requirement is to protect retirement funds. Just as the *Hutto* Court read the statutory purpose into the insurance policy to find the policy covered the vehicle involved in the accident, this Court should look to ERISA's purpose of protecting retirement funds and require Federal to pay out the entirety of the $5,000,000 limit set forth in the Federal-Michelin Policy.

## B.    The Other Insurance Clause Does Not Apply According to Its Own Language.

"Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Auto Owners Ins. Co. v. Benjamin*, 415 SC 137, 781 SE 2d 137 (Ct. App., 2015) (quoting *Owners Ins. Co. v. Clayton*,

14

364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005)).  Moreover, ambiguities in insurance policies must be construed against the insurer and in favor of the insured.  *See, e.g., Super Duper, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 385 S.C. 201, 210, 683 S.E.2d 792, 796 (2009).  The "strict rule of construction against the insurer is applicable to 'other insurance' clauses." *Mancuso v. Rothenberg*, 67 N.J. Super. 248, 255, 170 A.2d 482, 486–87 (App. Div. 1961) (citing 5 Couch, Cyclopedia of Insurance Law (1929), sec. 1042, p. 3643; *Roman Catholic Church v. Royal Ins. Co.*, 158 La. 601, 104 So. 383 (Sup.Ct.1925)).

     *1.    Neither Michelin nor the Plan "has any other bond indemnity or insurance."*

According to its own language, the Other Insurance Clause applies only "[i]f the Insured, or any other party at interest in any loss, *has* any other bond indemnity or insurance which in the absence of this policy would cover such loss in whole or in part."  (ECF No. 1-1 p. 8) (emphasis added). The Insured under the Federal-Michelin Policy includes Michelin and the Plan. However, neither Michelin nor the Plan "has any other bond indemnity or insurance which in the absence of this policy would cover such loss in whole or in part."

Neither Michelin nor the Plan "has" the AIG-CGEM Policy.  CGEM is the policyholder and procured the policy.   Neither Michelin nor the Plan is the insured.  The AIG-CGEM Policy defines "**Insured**" as "[t]he **policyholder**, for losses suffered by it or its **subsidiaries** and resulting from an **offense** covered by this contract."  (ECF No. 13-2 p. 41).  The "**policyholder**" is CGEM. (ECF No. 13-2 pp. 44, 39).  Thus, neither Michelin nor the Plan "has" the AIG-CGEM Policy.  At most, the term "has" is ambiguous, which means the term must be construed against Federal and in favor of Michelin.  *See Contravest Inc.*, 2017 WL 1190880, at *8 n. 9 ("Even when a policy is ambiguous—a situation when the interpretation of an ordinary contract would go to the jury—South Carolina law requires the court to construe the ambiguity in favor of

15

the insured."); *Ward*, 257 Fed. Appx. at 630 (instructing the district court to grant summary judgment to an insured because 1) the undefined phrase "actual charges" in the insurance policy was a patent ambiguity in that it was susceptible of two interpretations, 2) the court, not the jury must construe the policy, and 3) South Carolina law required the court to resolving the ambiguity in favor of the insured).

While CGEM "has" the AIG-CGEM Policy, CGEM is not "a party at interest" in the loss. CGEM is a separate entity from Michelin and the Plan. It was not a fiduciary of the Plan and has no responsibilities or beneficial interest with respect to the retirement funds at issue. Nor do its employees. Again, to the extent this phrase is ambiguous, that ambiguity must be resolved against Federal and in favor of Michelin. *See Contravest Inc.*, 2017 WL 1190880, at *8 n. 9; *Ward*, 257 Fed. Appx. at 630.

Because neither Michelin nor the Plan "has" other insurance that would cover this loss, the Other Insurance Clause does not apply and Federal must pay the remaining $2,459,958 that is owed under the Federal-Michelin Policy.

### 2. *The AIG-CGEM Policy does not cover the loss.*

The Other Insurance Clause also does not apply because the AIG-CGEM Policy does not "cover such loss in whole or in part" within the meaning of the Other Insurance Clause. Federal bears the burden of establishing the applicability of the Other Insurance Clause, *see Clayton*, 364 S.C. at 560, 614 S.E.2d at 614, and has failed to meet this burden. Even though the AIG-CGEM Policy is governed by French law, Federal has failed to cite any French law to establish that the AIG-CGEM Policy would cover the claim.

AIG has advised CGEM that the coverage under the AIG-CGEM Policy applies only on an excess basis, and only after evidence of the complete exhaustion of the coverage available

under the Federal-Michelin Policy.  Consequently, the AIG-CGEM Policy does not cover such loss within the meaning of the Other Insurance Clause.  The Other Insurance Clause states that it "shall not cover, to the extent of the amount of such other bond, indemnity or insurance; but shall attach to and cover . . . only the amount of such loss in excess of the amount of such other bond, indemnity or insurance."  (ECF No. 1-1 p. 8).  The phrase "the amount of such other bond, indemnity or insurance" (which appears twice) should be construed as referring to the amount of such other bond or insurance actually recovered by Michelin.

First, any other interpretation would violate requirements of ERISA.  ERISA mandates that "[s]uch bond shall provide **protection** to the plan against loss by reason of acts of fraud or dishonesty," 29 U.S.C.A §1112(a)(3), and must "insure from the first dollar of loss up to the requisite bond amount and not to permit the use of deductible or similar features whereby a portion of the risk within such requisite bond amount is assumed by the insured."  29 C.F.R. § 2580.412-11.  The Other Insurance Clause purports to be null and void where another policy "would cover such loss in whole or in part."  If "cover" and "the amount of such other bond, indemnity or insurance" are construed only that the loss falls within the scope of the other insurance policy or bond, without regard to recovery by Michelin, then Michelin would be left with no recovery unless it is able to actually collect from the other policy or bond.  This violates the requirement that the bond protect the Plan against loss by reason of acts of fraud or dishonesty, and that the bond insure from the first dollar of loss up without shifting any portion of the risk to the insured.[5]

---

[5] Federal cites a 1969 California case, *Fireman's Fund American Ins. Co. v. State Farm Mutual Auto Ins. Co.*, 273 Cal.App.2d 445 (1969), for the proposition that an escape clause is enforceable and that a pro rata clause yields to such escape clause.  This case is inapposite, first because it did not involve an ERISA bond, nor is there any mention of statutorily mandated coverage.  Aside from these issues, the AIG-CGEM Policy does not have a pro rata other

Putting aside the issue of standing and the fact that Michelin is not an insured under the AIG-CGEM Policy, the AIG-CGEM Policy includes a forum selection clause that requires all disputes to be brought in France, as well as a provision that claims may be submitted for arbitration according to the rules of the International Chamber of Commerce. *Michelin* procured $5,000,000 in coverage to protect retirement funds of its employees. It should not have to pursue its loss in France based on a policy it did not procure with provisions it did not negotiate.[6] Michelin should get the benefit of its bargain.

This interpretation is further supported by the Recoveries clause in the Federal-Michelin Policy, which states:

> [i]f any loss covered by this policy exceeds the amount of coverage provided by this policy, the Insured **shall be entitled** to **all recoveries** (except from suretyship, insurance, reinsurance or indemnity taken by or for the benefit of [Federal]) by whomsoever made, on account of such loss under this policy **until fully reimbursed**, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

(ECF No. 1-1 p. 8) (emphasis added).

There is no dispute that the loss is covered or that the loss exceeds the amount of coverage. Consequently, Michelin is "**entitled** to **all recoveries**" on account of the loss "until **fully reimbursed**." (emphases added). The only limitation on "all recoveries" is recoveries from insurance taken by or for the benefit of Federal- a limitation that does not apply here. Clearly, "all recoveries" includes recoveries *from* Federal. The recoveries are not supposed to stop until Michelin has been "fully reimbursed." Thus, read together, the Other Insurance Clause and the Recoveries Clause require that Michelin be *reimbursed* for its losses, and Federal cannot

---

insurance provision; rather, it clearly states that it only applies as excess to local policies. *See* ECF No. 13-2 pp. 57, 59.

[6] The Federal-Michelin Policy has a subrogation clause. (ECF No. 1-1 p. 8). Upon full payment of the $5,000,000 to Michelin, Federal certainly is free to seek contribution from AIG Europe.

withhold payment until it reaches its policy limits or Michelin is fully reimbursed.[7]  Neither of those has occurred here.  Federal still owes $2,459,958 under the Federal-Michelin Policy.  Consequently, Federal must pay Michelin the remaining $2,459,958.

**C.     The Policies Are Not Concurrent Because They Do Not Insure the Same Entity, the Nature of the Insurance is Different, and the Two Policies Have Different Purposes.**

Even if the Other Insurance Clause applied under its own language, apportionment is inappropriate because the two policies are not concurrent.  "'Other insurance' clauses are intended to apportion an insured loss between or among insurers where two or more policies offer coverage of the same risk and same interest for the benefit of the ***same insured*** for the same period." *South Carolina Ins. Co. v. Fidelity and Guaranty Ins. Underwriters, Inc.*, 327 S.C. 207, 213, 489 S.E.2d 200, 203 (1997) (emphasis added).  In *South Carolina Ins. Co. v. Fidelity and Guaranty Ins. Underwriters, Inc.* (hereafter "*SCIS*"), the South Carolina Supreme Court determined that prior South Carolina cases "suggest" that if multiple policies "insure the ***same entity*** and the same interest against the same casualty" then the policies are concurrent and proration is appropriate.  *Id.*  There is no concurrent coverage if the policies insure different entities.  *See Security Insurance Company of Harford v. NationsBank, N.A.*, 5 Fed. Appx. 279, 283 (4th Cir. March 15, 2001) (applying South Carolina law and affirming grant of summary judgment where "the district court analyzed the issues fully, and it found that concurrent coverage did not exist because the Policy, on the one hand, and the policies written by the Appellants, on the other, ***did not insure the same entity***.") (emphasis added); *Lucas*, 209 S.C. 521, 41 S.E.2d 212 (one policy insured a carrier against legal liability, the other insured the

---

[7] To the extent the Recoveries Clause conflicts with the Other Insurance Clause, the Recoveries Clause prevails because "'[c]onflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" *Bardsley v. Gov't Emps. Ins. Co.*, 405 S.C. 68, 76, 747 S.E.2d 436, 440 (2013) (quoting *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995)).

property owner against destruction of property); *Murdaugh v. Traders & Mechanics Insurance Co.*, 218 S.C. 299, 62 S.E.2d 723 (1950) (one policy protected the homeowner, the other protected the mortgagee); *Laurens F. S. & L. v. Home Ins. Co.*, 242 S.C. 226, 130 S.E.2d 558 (1963) (mortgagor and mortgagee as in Murdaugh); *Mulkey v. United States Fidelity & Guaranty Co.*, 243 S.C. 121, 132 S.E.2d 278 (1963) (one policy for chattel mortgagee, the other for mortgagor); *Thomas v. Penn Mutual Fire Insurance Co.*, 244 S.C. 581, 137 S.E.2d 856 (1964) (one policy protected the seller and the other protected the purchaser of real property); *Johnson v. Fidelity & Guaranty Co.*, 245 S.C. 205, 140 S.E.2d 153 (1965) (mortgagor and mortgagee same as Murdaugh); *Vance Truckinq Co. v. Canal Ins. Co.*, 395 F.2d 391, 396 (4th Cir. 1968);

Here, as set forth above, the policies insure different entities.  First and foremost, CGEM is the only insured on the AIG-CGEM Policy and is not an insured on the Federal-Michelin Policy.  This fact alone establishes that the two policies are not concurrent and, therefore, should not be apportioned.

Second, the nature of the insurance is different.  *See Lucas*, 209 S.C. at 530, 41 S.E.2d at 216 ("the phrase 'other insurance' was intended to embrace other insurance of the same nature taken out by the insured or the owners of the cotton").  The Federal-Michelin Policy, pursuant to ERISA, bonds the fiduciaries of the Plan "and every person who handles funds or other property" of the Plan.  *See* 29 U.S.C. § 1112(a).  An ERISA bond thus "covers" those fiduciaries and applies to "natural persons."  *See, e.g.,* 29 C.F.R. §§ 2580.412-3, 2580.412-12.  In contrast, as set forth above, the AIG-CGEM Policy cannot be an ERISA bond because it does not meet the ERISA bonding requirements for numerous reasons.  Moreover, the Federal-Michelin Policy is governed by South Carolina law and the statutory requirements and purpose of ERISA, while the AIG-CGEM Policy is clearly governed by French law.  Federal has not cited any French law to

20

meet its burden of establishing the applicability of the Other Insurance Clause, nor is there any citation for how French law apportions multiple policies, if at all.  It would be inappropriate for the Court to apportion an ERISA bond with a policy issued to a different entity and governed by French law.

Third, there is a lack of identity in "the purpose of the policies." *See Lucas*, 209 S.C. at 527, 41 S.E.2d at 215 ("[t]here is a lack of identity not only in the scope of the risk, but in the purpose of the policies.").   The Federal-Michelin Policy is intended to protect retirement funds and to fulfil ERISA's bonding requirement, and is required by statute.  *See Lucas*, 209 S.C. at 526, 41 S.E.2d at 214 (holding that a carrier's insurance policy, which was "required by statute for the protection of the shipper or the owner of the cargo," provided coverage without any contribution from the insurer of the owner of the damaged goods despite "other insurance" clause).  The AIG-CGEM Policy, as discussed below, is intended to fill the gaps between the coverage provided by a multinational organization's master insurance policies and coverage provided by policies purchased locally in accordance with each country's insurance requirements.

For these reasons, the two policies are not concurrent and should not be prorated.

**D.**    **Even If the Two Policies Were Concurrent, the Total Policy Insuring Intent Does Not Support Proration.**

The South Carolina Supreme Court in *SCIS*, *supra*, found that the insurance policies at issue were clearly concurrent under existing precedent but explained that those cases "do not squarely address whether a distinction should be made between the kind of coverage provided by blanket and specific policies." *SCIS*, 327 S.C. at 214, 489 S.E.2d at 203.  Rather than "a wooden distinction between 'blanket' and 'specific' policies, the *SCIS* Court determined that courts

21

should look to the "total policy insuring intent" embodied in the policy. *Id.* The *SCIS* Court

provided the following guidance on determining the "total policy insuring intent":

> [a]lthough the wording of "other insurance" clauses is a relevant factor in determining the total policy insuring intent of an insurer and its insured, the "other insurance" clause constitutes only one factor among many to be considered. Other pertinent factors for the Court to consider in ascertaining the purpose an insurance policy is intended to serve include (1) the stated coverage provided in the policy, (2) the premium paid for such coverage, (3) any requirements in the policy that the insured have underlying insurance policies, and (4) other relevant factors.

*Id.* at 215, 489 S.E.2d at 204.

Here, regarding the first factor, Michelin and the Plan are specifically named as insureds

under the Federal-Michelin Policy and the stated coverage is clearly intended to comply with the

ERISA bonding requirements. The AIG-CGEM Policy, on the other hand, is not an ERISA bond

because it does not satisfy the ERISA bonding requirements. Moreover, the stated coverage is to

"guarantee" CGEM against "the ***losses*** suffered by it or its ***subsidiaries***." Neither Michelin nor

the Plan is specifically named.

Regarding the second factor, CGEM was responsible for the premiums on the AIG-

CGEM Policy. *See* ECF No. 13-2 p. 65. Michelin was responsible for the premiums on the

Federal-Michelin Policy. This indicates that the AIG-CGEM Policy and the Federal-Michelin

Policy have primary coverage for the losses of their particular named insureds. The total policy

insuring intent is for the owner of the property to provide primary coverage. *See State Auto*

*Prop. & Casualty Ins. v. Gibbs*, 314 S.C. 345, 444 S.E.2d 504 (1994) (husband's policy excess to

wife's policy covering her automobile wrecked by husband); *Wrenn & Outlaw, Inc. v.*

*Employers' Liability Assurance Co.*, 246 S.C. 97, 142 S.E.2d 741 (1965) (supermarket's policy

excess to automobile owner's policy); *Macloskie v. Royal Indemnity Co.*, 254 F. Supp. 782

(D.S.C. 1966) (renter's automobile policy excess to rental company's policy for one of its automobiles).[8]

Regarding the third factor, the AIG-CGEM Policy includes a "Passport Program" that specifically contemplates the existence of local policies outside the European Union, and refers to the AIG-CGEM Policy as the "master contract." (ECF No. 13-2 p. 56).  It was clearly a "Difference in Conditions" Policy designed to fill the gaps between the coverage provided by policies purchased locally.  The AIG-CGEM expects that there will be local policies, and specifically provides that the coverage will not apply to such local policies except as excess.  The limit of liability in the AIG-CGEM Policy applies to CGEM and its subsidiaries, and *any* loss paid during the one year insurance period reduces the limit.

In contrast, the Federal-Michelin Policy was issued to Michelin, the plaintiff, and was intended to cover this specific type of loss.  It is not a Difference in Conditions policy intended to fill gaps in coverage.  Moreover, the payment of any loss under the Federal-Michelin Policy "shall not reduce the liability of the Company for other losses whenever sustained."  Under the factors set forth in *SCIS*, the total policy insuring intent was that the Federal-Michelin Policy is primary.

Finally, and perhaps most significantly, Federal and Michelin must have intended the Federal-Michelin Policy to be primary because it could not have been excess.  ERISA requires that ERISA bonds insure ***from the first dollar*** of loss up to the requisite bond amount and not to permit the use of deductible or similar features whereby a portion of the risk within such requisite bond amount is assumed by the insured."  29 C.F.R. § 2580.412-11 (emphasis added).

---

[8] In its brief, Federal argued that Federal is excess because its premium is lower.  However, the scope of the coverage under the AIG-CGEM Policy is much larger than the Federal-Michelin Policy.

The Federal-Michelin Policy was intended to comply with ERISA, and to comply with ERISA, it had to insure from the "first dollar up to the requisite bond amount."  To insure from the first dollar up must mean that it is primary- it cannot be excess.  Clearly, the intent had to be for the Federal-Michelin Policy to be primary and not excess.

### CONCLUSION

For all of the reasons set forth herein, the Court should deny Federal's Motion to Dismiss and grant Michelin's Motion for Judgment on the Pleadings and Summary Judgment, finding that Federal must pay the remaining $2,459,958 that is owed under the Federal-Michelin Policy, and entering judgment in favor of Michelin against Federal in the amount of $2,459,958.

Respectfully submitted,

s/ J. D. Quattlebaum
J. D. Quattlebaum, Fed. ID #5252
dquattlebaum@hsblawfirm.com
Denny P. Major, Fed ID No. 10225
dmajor@hsblawfirm.com

HAYNSWORTH SINKLER BOYD, P.A.
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, SC  29602
(864) 240-3249
(864) 240-3300 (facsimile)

*Attorneys for Plaintiff*
*Michelin North America, Inc.*

September 18, 2017
Greenville, South Carolina