# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Michelin North America, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Federal Insurance Company, <br><br> Defendant. | Civil Action No. 6:17-cv-01599-HMH <br><br> **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT** |

On January 14, 2016 Michelin North America, Inc. (**"Michelin"**) learned for the first time that the Michelin Retirement Plan was the victim of a criminal scheme and over $8,000,000 had been stolen from the Plan. On that same day, January 14, 2016 Michelin turned to its ERISA Bond provider Federal Insurance Company ("**Federal**"), notifying Federal of the loss as Michelin began what has turned into a long and expensive process trying to recover this tremendous loss to its employees' retirement income Plan. Instead of partnering with Michelin, paying the $5,000,000 ERISA Bond benefits and working with Michelin to recover the stolen monies from those responsible for this crime, since January 14, 2016 Federal has devoted its resources in search of any possible loophole Federal can create to avoid its obligations to Michelin.

Michelin submits this Reply in Support of its Motions for Judgment on the Pleadings and Summary Judgment to address certain arguments submitted by Defendant Federal.

**I.     The Law Provides that the Issue of Dueling "Other Insurance" Clauses Concerns Federal and AIG, Not Michelin, and Michelin Cannot Be Left with Partial Payment.**

As it did in its Motion to dismiss, in its response to Michelin's Motion for summary judgment, Federal admits that Michelin's claim is covered by the Federal-Michelin Policy. Federal admits that the loss sustained by Michelin is in excess of Federal-Michelin Policy limits

of $5,000,000.  Federal does not dispute that the only policy Michelin North America, Inc. owns which covers this loss is the Federal-Michelin Policy.

Despite these admissions, Federal asserts that it is Michelin that is trying "to have its cake and eat it too" and that somehow the Plan would "benefit" from a ruling that Federal has no further liability (ECF No. 22 pp. 3, 4); an astounding statement from the party that accepted premiums year after year to provide a policy of insurance which it admits covers the loss yet refuses to make full payment to its insured.  Instead of standing behind its contractual and legal obligations, Federal asks this Court to force Michelin to go overseas and try to establish coverage and recover benefits under a policy owned by a French entity, which policy is governed by French law.

The burden of going to France to pursue coverage does not fall upon Michelin.  As the South Carolina Supreme Court stated in *SCIC v. Fidelity and Guaranty Insurance*, 489 S.E.2d 200, 202 (S.C. 1997) ("*SCIC*"), "'[o]ther insurance' clauses are intended to apportion an insured loss between or among ***insurers*** . . ." (emphasis added).  As the district court noted in *Sec. Ins. Co. v. Arcade Textiles, Inc.*, C.A. No. 0:98-2545-17 (D.S.C. March 16, 2000), which is attached to Federal's response brief at ECF No. 22-3:

> "'Other insurance' clauses only affect insurers' rights among themselves; they do not affect the insured's right to recovery under each concurrent policy.  Inter-insurer loss allocation by way of 'other insurance' clauses never permits allocation of a loss to the insured.  Payment of the insured's claim always takes priority over the allocation of the loss between concurrent insurers."

*Id.* at p. 7 (ECF No. 22-3 p. 8) (quoting Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self Insurance*, 22 Pepp. L. Rev. 1373, 1380-81 (1995)).[1]

---

[1] As the district court noted in *Arcade Textiles*, this law review article was described by the South Carolina Supreme Court in *SCIS* as "'an excellent, comprehensive analysis of this topic in the

2

This proposition is further supported by numerous authorities.[2]

Federal has not cited a single case in which an insured with a covered loss recovered less than the insured's loss or the policy limits on the basis of an "other insurance" clause.[3] In

---

context of property as well as liability insurance.'" *See Arcade Textiles*, C.A. No. 0:98-2545-17 at n. 7 (ECF No. 22-3 p. 8) (quoting *SCIS*, 489 S.E.2d at 202 n. 4).

[2] *See, e.g., Yaffe Companies v. Great Am. Ins. Co.*, 499 F.3d 1182, 1189 (10th Cir. 2007) (quoting 15 Lee R. Russ, Couch on Insurance § 219:1 (3d ed. 2007)) ("'Other insurance' clauses govern the relationship between insurers, they do not affect the right of the insured to recover under each concurrent policy."); *In re Deepwater Horizon*, 12-311, 2014 WL 5524268, at *8 (E.D. La. Oct. 31, 2014) (same), aff'd in part, question certified sub nom, 807 F.3d 689 (5th Cir. 2015); *see also Liberty Mut. Ins. Co. v. Pella Corp.*, 633 F. Supp. 2d 714, 724 (S.D. Iowa 2009) ("under well-established law, 'other insurance' provisions found in policies providing primary coverage govern the relationship between insurers, and do not diminish an insured's coverage rights under any concurrent insurance policies."); *RLI Ins. Co. v. Hartford Indem. Co.*, 980 F.2d 120, 122 (2d Cir. 1992) ("other insurance" clause can only be used between insurers to establish order of coverage); *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 817 F. Supp. 1136, 1154 n. 11 (D.N.J. 1993) ("The court notes that the 'Other Insurance' clauses found in certain of defendants' policies only affect the rights of the insurers among themselves. They do not implicate [the insured]'s right to full recovery under each triggered policy."), aff'd in part and remanded on other grounds, 89 F.3d 976 (3d Cir. 1996); *Rhone-Poulenc, Inc. v. International Ins. Co.*, No. 94 C 3303, 1996 WL 328011, at *10 (N.D. Ill. Jun. 11, 1996) ("[W]hen no insurer has paid a claim, it is not customary for an insurer to refuse to pay an otherwise valid claim on the basis of an other insurance clause, on an assumption or prediction that another carrier will or may pay the insured's claim when such carrier has not expressly acknowledged an obligation to provide coverage"); *Aetna Casualty and Surety Company v. CNA Insurance Company*, 606 A.2d 990, 992 (Conn. 1992) (holding that an "other insurance" clause could only be used to resolve disputes between insurers not against a policyholder and that any attempt to use an "other insurance" clause to deny a policyholder coverage would be contrary to public policy); *Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co.*, 494 N.E.2d 634, 650 (Ill. App. 1st Dist. 1986) ("the fact that a policy may contain an 'other insurance' clause does not affect the individual insurance company's obligations to the insured."); *Bazinet v. Concord General Mut. Ins. Co.*, 513 A.2d 279, 281 (Me. 1986) ("'other insurance' clauses cannot be used by the insurers to defeat liability to their insureds."); *Slabic v. Hendrickson*, 147 Misc. 2d 472, 556 N.Y.S.2d 236 (Sup. Ct. 1990); *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 589 (Tex. 1969) (explaining that other insurance provisions give rise to contests between insurers in which "the insured is actually left on the sidelines"); Eugene R. Anderson et al., Insurance Coverage Litigation § 19.03[A][6][a] (2d ed. 2017 Supp.) ("It is a well-established principle of insurance law and insurance industry custom and practice that 'other insurance' clauses apply only in battles between insurance companies.").

[3] It should be noted that the rule that "other insurance" clauses apply only to insurers is only applicable for "other insurance" clauses and not true excess clauses. *See Pella Corp.*, 633 F. Supp. 2d at 725. This distinction makes sense because "other insurance" clauses are made for

3

*Galloway v. S. Farm Bureau Ins. Co.*, 147 S.E.2d 271 (S.C. 1966), the insurer, who was trying to avoid payment on the basis of an "other insurance" clause, was ordered to pay the policy limits. In *Carter v. Std. Fire Ins. Co.*, 753 S.E.2d 515 (S.C. 2013), the South Carolina Supreme Court found in favor of the insured and against the insurer, specifically, that an exclusion was invalid as inconsistent with S.C. Code § 38-77-160.  In *Whitmire v. Nationwide Mut. Ins. Co.*, 174 S.E.2d 391 (S.C. 1970), the plaintiff obtained a $10,000 judgment, and Nationwide was forced to pay the entirety of that judgment. *S.C. Farm Bureau v. S.E.C.U.R.E. Underwriters*, 578 S.E.2d 8, 10 (S.C. 2003) was a declaratory judgment action regarding priority of coverage and the Court found that one insurer had primary coverage while another had excess.  In *SCIC*, *supra*, the insurer paid the insured's claim and was seeking contribution from the other insurer. *Vance Trucking v. Canal Ins.*, 395 F.2d 391, 396 (4th Cir. 1968) dealt with liability insurance of joint tortfeasors and the court held that "each policy protects the insured named therein against all sums which it is legally obligated to pay within policy limits." *Id.* at 396-97.  In *Blanding v. Long Beach Morg.*, 665 S.E.2d 608 (S.C. App. 2008), vacated at 702 S.E.2d 558 (2010), the primary insurer paid the claim and the limits of its policy, and such payment "was sufficient to cover the loss of the insured property." 665 S.E.2d at 614.

In *Bardsley v. GEICO*, 747 S.E2d 436 (S.C. 2013), which arose out of the notorious John Ludwig Maserati accident, the plaintiff had $457,318.47 in coverage on a homeowners policy with State Farm and $100,000 in UIM property damage with GEICO.  State Farm paid $127,813.49 in repair payments but insisted on being subrogated and reimbursed from the $3 million the plaintiff received from Ludwig's liability policies.  The plaintiff settled by paying

---

the purpose of allocating responsibility among insurers if there is other insurance, and not in reliance on the existence of a particular policy.  Clearly, the Federal-Michelin Policy is an "other insurance" clause and not a true excess clause. *See generally Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327 (4th Cir. 2008).

State Farm $94,424.75 from the liability proceeds and stipulated to $88,230.47 for damages to the residence.  The court upheld GEICO's refusal to pay $100,000 in UIM property damage coverage based on a policy provision that insurance for property damage would be excess to other valid and collectible insurance.  The plaintiff was paid in full for her property damages.  As the court stated, the plaintiff "stipulated that State Farm covered all her property damages" and "chose to settle the subrogation claim," and such settlement "does not mean she did not receive coverage and payment for her property damages."  *Id.* at 443.

## II.      Federal's Arguments Regarding the Impact of ERISA Are Unavailing.

Federal does not dispute that the Federal-Michelin Policy was an ERISA bond, and that it was the only bond that meets ERISA's bonding requirements.  Instead, Federal argues that ERISA does not prohibit the inclusion of an "other insurance" clause, relying on 29 C.F.R. § 2580.412-1(c), *Bardsley*, and *Blanding*.  Contrary to Federal's argument, 29 C.F.R. § 2580.412-1(c) does not "expressly" authorize inclusion other insurance clauses or any particular provision.  Rather, it *prohibits* provisions that contravene the relevant state law where it is executed, in addition to the other regulations concerning ERISA bonds.

Federal asserts that coverage beyond $500,000 is not subject to the ERISA bonding restrictions.  However, the Other Insurance Clause is not limited to coverage in excess of $500,000.  The fallacy of Federal's position is revealed by its own assertion that "[i]f the [AIG-CGEM Policy][4] does not contain a dueling provision, Federal has no liability whatsoever because the [AIG-CGEM Policy] provides coverage under this clause."  (ECF No. 22 p. 7 n. 7). Under that interpretation, the Federal-Michelin Policy would be void in its entirety and 1) Michelin would be without an ERISA bond issued by "an acceptable surety," which violates 29

---

[4] Federal refers to the AIG-CGEM Policy as the "Corporate Policy" apparently in hopes that the Court will forget that the AIG policy was procured and owned by CGEM, not Michelin.

5

U.S.C.A. § 1112(a) and 29 C.F.R. § 2580.412-21, and 2) even assuming there are no coverage issues under the AIG-CGEM Policy, there would be a $500,000 deductible before Michelin could recover any insurance, which is a clear violation of 29 C.F.R. § 2580.412-11. Consequently, Federal's interpretation cannot be correct. *See* 17A Am. Jur. 2d Contracts § 363 ("Contracting parties are presumed to contract in reference to the existing law, and to have in mind all the existing laws relating to the contract, or to the subject matter thereof"); *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 726 (D.S.C. 2015) ("Under South Carolina law, it is a fundamental rule of contract construction that the law existing at the time and place of the making of a contract is a part of the contract.").

Moreover, in addition to other statutory and regulatory requirements of ERISA bonds, 29 U.S.C.A. §1112(a) requires that "[t]he amount of such bond shall be ***fixed*** at the beginning of each fiscal year of the plan." (emphasis added). It does not say that only the minimum amount shall be fixed. Furthermore, in these bonds "the amount of the bond is available for dishonesty losses caused by persons covered thereunder or losses in which such person is concerned or implicated." 29 C.F.R. §2580.412-10(d)(1). Here the amount of the Federal-Michelin Policy- which undisputedly was the only bond meeting ERISA's bonding requirement- was fixed at $5,000,000. The Other Insurance Clause is contrary to this requirement because, if enforced, it would alter the amount of the bond. Consequently, the Other Insurance Clause is void in its entirety, and Michelin is entitled to coverage at the policy limits of $5,000,000. *See* <u>Williams v. Govt. Employees Ins. Co.</u>, 762 S.E.2d 705 (S.C. 2014) (holding insurance policy exclusion that reduced coverage down from policy limit stated in declarations to statutory minimum was void and unenforceable).

In any event, regardless of the fact that ERISA does not require bonds in excess of $500,000, the Federal-Michelin Policy must be construed to carry out ERISA's purpose of protecting the interests of participants in employee benefit plans and their beneficiaries. Federal attempts to distinguish *Watson v. Harmon*, 312 S.E.2d 8 (S.C. Ct. App. 1984) and *Hutto v. American Fire and Casualty Ins. Co.*, 54 S.E.2d 523 (S.C. 1949) on the grounds that they do not involve ERISA or "other insurance" clauses. However, the import of those cases is the principle that construction of a policy should be guided by the public policy embodied in the statute- here, protection of employee retirement funds. *See also Williams*, 762 S.E.2d at 712 ("[p]ublic policy considerations include not only what is expressed in state law, such as the constitution and statutes, and decisions of the courts, but also a determination whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare."). Michelin should not have to risk recovery of its employees' retirement funds- which are protected by the laws and policies of the United States- in French courts.

### III.     Federal Cannot Show the Other Insurance Clause Applies Under Its Own Terms.

The Other Insurance Clause does not apply unless "the Insured, or any other party at interest in any loss, *has* any other bond indemnity or insurance which in the absence of this policy would cover such loss in whole or in part." (ECF No. 1-1 p. 8). The requirement that the insured "has" other insurance must have meaning; otherwise, the provision would just omit that requirement and simply refer to the condition of the existence of other insurance that covers the loss. *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 417, 756 S.E.2d 148, 153 (2014) ("[A]n interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous."). Federal points to two

7

cases (*see* ECF No. 22 pp. 9-10) that Federal claims ordered pro-ration even where the policies were issued to two different entities.  However, not only are these cases distinguishable, but they have nothing to do with the requirement in the Federal-Michelin Policy that the insured "has" the insurance, which must be given meaning.

Federal also asserts that the Plan can pursue a claim under the AIG-CGEM Policy. However, the ability to pursue a claim under the CGEM policy in France pursuant to French law (assuming Michelin does have that standing) does not equate to Michelin or the Plan "having" the insurance within the meaning of the Federal-Michelin Policy.  If coverage was all that was required, it would render the "has" requirement meaningless.

Finally, Federal's argument that CGEM is "a party at interest" is also without merit.  As set forth in Michelin's brief, CGEM is not a sponsor, fiduciary or participant of the Plan, and its employees are not participants.  In fact, Federal's own brief asserts that CGEM is not "a party at interest."  Federal's assertion of Michelin's standing to pursue a claim is based on the premise that any other result would render the coverage illusory because CGEM cannot seek coverage since it did not "suffer[ ] an interest in the loss."  (ECF No. 22 at p. 13).

Moreover, Federal's position that the Other Insurance Clause merely requires that the loss fall within the scope of coverage provisions of the AIG-CGEM Policy is without merit for several reasons.

First, while Federal has submitted an affidavit from a French attorney regarding coverage under the AIG-CGEM Policy (ECF No. 22-2), nothing in that affidavit, or in Federal's brief, discusses French law's treatment of Difference in Conditions provisions such as that in the AIG-CGEM Policy or multiple policies with excess "other insurance" provisions.  Federal asserts that French law requires enforcement of policy terms.  *See* ECF No. 23 p. 6.  Under the terms of the

AIG-CGEM Policy, where there is a local policy that is not reinsured by the AIG-CGEM Policy, the "coverage" under the AIG-CGEM Policy applies as "Difference in Conditions (DIC) and as Difference in Limits (DIL) coverage of the local policy." (ECF No. 22-2 p. 68 of 281). This means that where the local policy offers "any coverage covered by [the AIG-CGEM Policy]," "coverage" under the AIG-CGEM Policy applies "after exhaustion of the limits of liability" of the local policy. (ECF No. 22-2 p. 70 of 281). The Federal-Michelin Policy is a local policy, and the limit of liability has not been exhausted because of Federal's refusal to pay. Federal has not met its burden of showing that the AIG-CGEM Policy would cover any amount before the limit of liability ($5,000,000) in the Federal-Michelin Policy.

Even then, the intent of Federal and Michelin had to be that the Federal-Michelin Policy would pay if the insured cannot actually recover from another insurer a portion of the loss that is covered under the Federal-Michelin Policy. Federal does not deny that the Policy was intended to comply with the ERISA bonding requirements, which requires bonds to insure from first dollar up to the requisite bond amount (the lesser of 10% of funds handled or $500,000) without the use of a deductible. 29 C.F.R. § 2580.412-11. Yet these requirements would be violated if Federal could avoid paying Michelin for losses that are within the scope of coverage of another policy but that cannot actually be recovered. Such interpretation cannot be maintained. *See* 17A Am. Jur. 2d Contracts § 363; *Moodie*, 124 F. Supp. 3d at 726. The Federal-Michelin policy does not distinguish between $500,000 and $5,000,000. It does not say that it is primary for the first $500,000 (or 10% of funds handled) and excess for the remainder. The exact same provisions apply whether the loss is $500,000 or $5,000,000. Consequently, Federal and Michelin clearly intended that the Federal-Michelin Policy provide for full recovery where Michelin does not actually recover other insurance.

9

Contrary to Federal's argument, this interpretation is further supported by the Recoveries clause in the Federal-Michelin Policy. Federal asserts that the Recoveries clause "merely grants MNAI permission to identify other sources of recovery" (as if Federal lacked that permission in the absence of this provision). Regardless of whether it grants such permission, it also plainly states that the insured is "**entitled** to **all recoveries**" until the insured is "**fully reimbursed**" unless the recovery is from insurance that Federal takes out for its benefit, which is not applicable here. Thus, the sources of that recovery include the Federal-Michelin Policy. What this clause does, then, is provide that the insured is "entitled" to full reimbursement from all sources, including the Federal-Michelin Policy, and that if the insured does recover against other sources it must reimburse Federal *only* if the insured recovers in excess of its loss.

## IV.     The Policies Are Not Concurrent, but Even If They Were, the Total Policy Insuring Intent Was that the Federal-Michelin Policy Is Primary and the AIG-CGEM Policy Is Excess.

Federal argues that the only relevant inquiry in determining whether proration is appropriate is whether the two policies cover the same interest or same risk. *See* ECF No. 22 pp. 9-12, 14-18. In *SCIS*, 489 S.E.2d at 203, the South Carolina Supreme Court determined that prior South Carolina cases "suggest" that if multiple policies "insure the *same entity* and the same interest against the same casualty" then the policies are concurrent and proration is appropriate. (emphasis added).

Federal cites *Vance Trucking* and *Blanding*, for the proposition that the two policies do not have to insure the same entity, but those two cases do not support that proposition. The Court in *Vance Trucking* was dealing with joint tortfeasors, one of which had a liability policy with Allstate, and one with Canal. The Fourth Circuit affirmed the district court's determination that Allstate would be liable for 5/6 of any judgment while Canal would be responsible for 1/6,

10

based on the liability limits. *See* 395 F.2d at 393. The Court determined that the tortfeasors shared a "common liability" and, therefore, so did the two insurers. *Id.* at 396. The issue of other insurance clauses was irrelevant. As the district court noted, which the Fourth Circuit quoted, "[t]he problems of 'other insurance' are but an enlightening adversion here, however, for we are not faced with such a problem." *Vance Trucking*, 395 F.2d at 394 (quoting 251 F. Supp. 93, 98).

*Blanding* is a Court of Appeals opinion that was vacated by the Supreme Court, *see* 390 S.C. 439, 702 S.E.2d 558 (2010). In any event, the mortgagor took out a policy from Foremost insuring her home that named her as named insured and the mortgagee as lienholder. *See* 665 S.E.2d at 611, 614. The mortgagee procured a policy from American Security covering the home that named the mortgagee as named insured and the mortgagor as additional insured. *Id.* at 614. After a fire to the home, Foremost tendered its policy limits, which "was sufficient to cover the loss of the insured property." 665 S.E.2d at 614. The mortgagee filed suit seeking to have proceeds of the American Security policy credited toward the debt. The Court of Appeals determined that the Foremost policy had primary coverage and the American Security policy was excess and was "not 'concurrent and contributive as a matter of law.'" *Id.* at 615. Consequently, this case does not stand for the proposition that policies insuring different entities are concurrent.

Moreover, even if the nature of the interest or risk is the relevant inquiry, here, the nature of the interest and risk is different. For example, Federal asserts that the courts in *Vernon v. Harleysville Mutual Casualty Co.*, 135 S.E.2d 841 (S.C. 1964) and *Lucas v. Garrett*, 41 S.E.2d 212 (1947) "declined to allocate losses because the policies covered different risk, not because they were issued to different entities." (ECF No. 22 p. 10 n. 8). The dispute in *Vernon* was between statutorily required UM property coverage in the vehicle owner's policy and collision

11

benefits in the driver's policy.  The dispute in *Lucas* was between a cargo carrier's policy that provided statutorily required liability insurance and a policy that insured the property owner against destruction of property.  In each case, both policies provided coverage, but only one had primary liability.  Similarly, here, the Federal-Michelin Policy covers different risks from the AIG-CGEM Policy.  The Federal-Michelin Policy is an ERISA bond, which Michelin was statutorily required to have, that bonds and "covers" the Plan fiduciaries "and every person who handles funds or other property" of the Plan.  *See* 29 U.S.C. § 1112(a).  It applies to "natural persons."  *See, e.g.,* 29 C.F.R. §§ 2580.412-3, 2580.412-12.  In contrast, the AIG-CGEM Policy does not meet the surety or deductible requirements of the ERISA statute, does not cover the Plan fiduciaries as set forth in ERISA, and, unlike the Federal-Michelin Policy, does not cover fraud and theft that is "committed with the intention of deriving a profit or of harming the *insured* or one of its *subsidiaries*." *See* discussion at ECF No. 17 pp. 9-10.

In addition, even if the policies are concurrent, the law is clear that the court must look to the total policy insuring intent embodied in the policy to determine whether to apportion coverage.  *SCIS*, 489 S.E.2d at 203.  The factors identified by the *SCIS* Court, 489 S.E.2d at 204, favor finding the Federal-Michelin Policy to be primary coverage.  The Federal-Michelin Policy does not mention any other policies that would provide coverage, and there is no evidence that Federal relied on any other policies in deciding to issue the policy.  Moreover, the intent of Federal and Michelin had to be that the Federal-Michelin Policy would provide primary coverage because, as set forth above, any contrary interpretation would violate ERISA given that the Federal-Michelin Policy does not distinguish between coverage above and below $500,000 (or 10% of funds handled).  In contrast, the AIG-CGEM Policy, which clearly cannot constitute an ERISA bond because it does not meet the statutory requirements, was taken out by a French

grandparent company with numerous subsidiaries across the globe.  It expressly contemplates that subsidiaries will procure local policies in the jurisdictions in which they operate, and expressly contemplates that it will serve merely as excess to those policies.  The fact that it has broad coverage further supports Michelin's position, because it shows the intent was only to fill gaps where there is not a primary policy in those jurisdictions.  The premium is high because of the numerous subsidiaries and the broad scope of entities and operations.

For these reasons, the policies are not concurrent, but even if they were concurrent, the total policy insuring intent reveals that the Federal-Michelin Policy is primary and the AIG-CGEM Policy is excess.  In any event, even if pro-ration would otherwise be appropriate, it is not appropriate here because it would force Michelin to pursue coverage in France with French courts, which is contrary to the proposition that "other insurance" clauses, such as the one at issue here, deal with rights amongst insurers and "do not affect the insured's right to recovery under each concurrent policy."

**CONCLUSION**

For all of the reasons set forth herein and in Michelin's initial brief (ECF No. 17), the Court should grant Michelin's Motion for Judgment on the Pleadings and Summary Judgment, finding that Federal must pay the remaining $2,459,958 that is owed under the Federal-Michelin Policy, and entering judgment in favor of Michelin against Federal in the amount of $2,459,958.

Respectfully submitted,

s/ J. D. Quattlebaum
J. D. Quattlebaum, Fed. ID #5252
dquattlebaum@hsblawfirm.com
Denny P. Major, Fed ID No. 10225
dmajor@hsblawfirm.com

HAYNSWORTH SINKLER BOYD, P.A.
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, SC  29602
(864) 240-3249
(864) 240-3300 (facsimile)

*Attorneys for Plaintiff*
*Michelin North America, Inc.*

October 27, 2017
Greenville, South Carolina